his real estate agent. Just what consideration Dorsett paid Shumaker for the four notes was not very clearly nor satisfactorily established. It also appeared that Dorsett and the plaintiff were brothers-in-law; that the check given for the note in suit was not deposited until March 30th, six days after its date; and that the plaintiff had not endeavored to enforce payment of the note against Shumaker or Dorsett. At the close of the case, therefore, the only evidence from which it could possibly be inferred that the plaintiff knew of any irregularity in the note is that he paid for it $25 less than its face value; that he was Dorsett's brother-in-law, and that he had not attempted to enforce collection against either Dorsett or Shumaker. This might be the basis for a conjecture—a mere suspicion—that the plaintiff, Dorsett, and Shumaker were acting together, and that the knowledge of one was the knowledge of all, but such conjecture or suspicion is insufficient to sustain the finding of a jury, which must be based upon evidence. The maker of a negotiable promissory note which on its face purports to be for value received, and negotiated before maturity, cannot escape liability upon what is at most a mere guess that the purchaser had knowledge at the time of the purchase of an agreement between the maker and payee. Commercial paper of this kind cannot be so easily destroyed. If it could, then there would be little or no safety in purchasing it. The verdict certainly is contrary to the great weight of evidence, if, indeed, it can be said to be supported by any evidence at all.

I am also of the opinion that the court erred in refusing to charge that:

"If the jury believe that Heinbach's testimony is true, then they have nothing to consider as to the relations between Shumaker and Dorsett."

If it be assumed that Dorsett had notice of the agreement between defendant and Shumaker, that did not prevent his conferring good title upon the plaintiff. If the plaintiff's testimony was true, then he was a holder in good faith, and whether or not Dorsett was such a holder was entirely immaterial. He acquired the note before it was due. He paid value for it, and the relation between Shumaker and Dorsett in no way prevented his enforcing payment.

The judgment and order appealed from, therefore, should be reversed and a new trial ordered, with costs to appellant to abide event.

PATTERSON, P. J., and LAUGHLIN and HOUGHTON, JJ., concur. SCOTT, J., dissents.

---

### CARLSEN v. McKEE et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1908.)

MASTER AND SERVANT (§ 201*)—INJURIES—FELLOW SERVANTS—PROXIMATE CAUSE.
    Plaintiff, with other workmen, having been directed to turn over an iron beam, procured a crowbar, but was directed by the superintendent to take hold of the beam with his hands. The workmen then took hold of the beam, plaintiff being at one end, and raised it 10 inches, when the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

other workmen let go, and it fell, injuring plaintiff's hand. Plaintiff's purpose in getting the crowbar was to pry up the beam so the other workmen could get hold of it to lift. *Held*, that the direction of the superintendent to plaintiff not to use the bar, but to take hold of the beam with his hands, was not the proximate cause of the injury, but that the proximate cause was the letting go of the beam by the other workmen, for which the master was not liable.

[Ed. Note.—For other cases. see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*]

Appeal from Trial Term, Kings County.

Action by Bernhart Carlsen against Harry D. McKee and another, doing business as the Eastern Construction Company. From a judgment for defendants, and an order denying a new trial, plaintiff appeals.. Affirmed.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

Charles Caldwell, for appellant.

William L. O'Brion, for respondents.

RICH, J. The plaintiff—a servant of the defendants—brought this action under the provisions of the employer's liability act to recover damages for a personal injury which he claimed to have sustained through the negligence of the superintendent of the defendants. The complaint alleges the service of a notice in which the statement of negligence is limited to the following clause:

"The accident was due to the negligence of your superintendent, named Smith, nicknamed 'Bull Head' Smith."

The plaintiff was the only witness sworn upon the trial. He testified that he and other workmen were directed to turn over an iron beam weighing about 800 pounds, for the purpose of ascertaining its number. He procured a crowbar and started towards the beam, when the superintendent told him to get hold of it with his hands. The workmen then took hold of the beam, the plaintiff being at one end, and had raised it 10 inches, when the other workmen let go of it, permitting it to fall back, and the plaintiff, who retained his hold, had his hand caught between it and another beam, causing the injury complained of. Plaintiff testified that the purpose he had in getting the bar, and the sole use he intended putting it to, was to pry, or as he says, "pinch up," the beam, so the other men could get hold of it to lift.

The learned trial court, at the close of plaintiff's case, dismissed the complaint upon the ground that the direction of Smith to plaintiff not to use the bar, but to take hold of the beam with his hands, and his compliance with such direction, if negligence, was not the proximate cause of the injury, and did not render the defendant master liable. This ruling was correct. The proximate cause of the accident was the letting go of the beam by the other workmen, a cause for which the master was not liable. Had the superintendent permitted plaintiff to use the bar, as he intended, to raise up the beam so the workmen could get hold of it, this object would have been accomplished the moment the men had secured their hold. This they did without the use of the bar, and had actually raised the beam 10 inches when it fell. The fail-

ure to use the bar was not connected with the accident. No negligent act or direction of the superintendent is shown to have been the cause of the injury.

The judgment and order must be affirmed, with costs. All concur.

(129 App. Div. 543.)

### MOSBACH v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, Second Department. December 30, 1908.)

CARRIERS (§ 318*) — CARRIAGE OF PASSENGERS—PERSONAL INJURIES—EVIDENCE OF NEGLIGENCE.

Evidence in an action against a carrier by one who attempted to board one of its cars and was injured in the attempt considered, and *held* sufficient to sustain a finding of negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1313; Dec. Dig. § 318.*]

Gaynor and Jenks, JJ., dissenting.

Appeal from Trial Term, Westchester County.

Action by Margaret Mosbach, as administratrix, etc., of Louis J. Mosbach, deceased, against the Union Railway Company of New York City. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MIL-LER, JJ.

Bayard H. Ames (Vine H. Smith, on the brief), for appellant.
James G. Graham, for respondent.

HOOKER, J. It is doubtless true that a street railroad corporation has the right to carry its injured cars to the barn for repair without being compelled to receive passengers upon them. It is also doubtless true that a whole car may be used to supply the motive power for removing the injured car to a place of repair. Under the circumstances of this case, however, I think the jury was justified in thinking that the appearance of the car and its management were both such that a reasonable man would have been justified in supposing that the car was for the purpose of accommodating passengers. It appears that the first car, upon which the deceased attempted to step, "had the appearance of a regular passenger car." The witness Shaw, in his evidence, says that he saw the car approach along Jerome avenue from the south, three or four blocks away from Burnside avenue, where he was standing, waiting to go north on Jerome avenue. Shaw and the deceased were standing on the north side of the Burnside avenue car tracks, and hence in the place where the Jerome avenue car would naturally stop to receive passengers. The car approached Burnside avenue very slowly, and crossed the Burnside avenue tracks slowly, and then, after crossing those tracks and proceeding northerly, it decreased its speed. Shaw got upon the car when it was either standing still or moving very slowly indeed, and as the deceased, following him, got one foot upon the car and one hand upon the hand rail, Shaw says that the motorman "threw the power on," and this was what jerked the deceased off. It also appears that the conductor did not

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes