ROGERS v. PETERSON et al. (Supreme
Court, Appellate Division, Third Department.
June 28, 1911.) Appeal from Trial Term. Action by James Rogers against Herman C.
Peterson and Hans Peterson, doing business
under the firm name and style of H. C. Peterson & Co. Judgment for defendants, and
plaintiff appeals. Affirmed.

PER CURIAM. Judgment affirmed, with
costs.

BETTS, J. I dissent. This is an action under the employer's liability act. The plaintiff,
a laborer, had been employed by the defendants
through their superintendent, Theodore Crist,
for about 2½ days before the accident occurred
by which the plaintiff was injured. The work
was erecting a steam pipe line in a conduit.
The pipe line consisted of 8-inch iron pipes
from 14 to 16 feet long and this 8-inch pipe
was placed on an iron roller, which inclosed
a short 1-inch pipe and was held by iron stanchions. Each pair of these stanchions were
about eight feet apart, two on each length of
pipe. At the time in question the plaintiff,
with six other men, had a somewhat shorter
piece of pipe to raise, and there was only one
pair of stanchions to place it on, instead of
the ordinary two pair. The usual manner
had been to raise up one end upon one pair of
stanchions, and shove it along upon another
pair of stanchions past the end of the pipe
they were going to couple to, and pull it back
on the other end piece of the other stanchion.
Then the men would get the 8-inch pipe in
their arms and raise it up and adjust it to
make the coupling on the 8-inch piece of pipe
that was already in position. This they would
do by inserting the end of the pipe into the
coupling, and make it fast by turning the
thread into the coupling by hand, and then
put on chain tongs and tighten it up. At the
time or just before the accident there was only
one pair of stanchions, instead of the usual
two pair of stanchions, and the seven men engaged there were hesitating as to putting up
this particular piece of 8-inch iron pipe, which
was about 14 feet long and heavy. Mr. Crist,
the superintendent, came in and inquired what
was the matter, and told the men who were
considering how to put up the pipe laying on
the floor to pick it up and shove it up into the
coupling; that is, the coupling of the other
pipe, that was already erected. This they did
in this way: The end with the thread on was
shoved into the coupling of the pipe that was
in position. Then this long pipe they were
raising ran diagonally out from this coupling
to the single pair of stanchions in which the
one-inch iron pipe was (somewhere about 4
feet up from the floor), and resting on the 1-inch iron pipe to the farther end of the pipe,
that would have the coupling to receive the
next piece of 8-inch pipe which was lying on
the floor. So we have this heavy 14-foot
length of iron pipe with the thread end just
a little way in the coupling of the pipe already
erected and running downward between the
stanchions and until the other end rested on
the floor. At this time apparently three men
were on one end of the pipe that was on the
floor, and one man at the other end trying to
hold it up in the coupling, and the plaintiff
was about the middle or near the stanchion,
none of them doing anything. Plaintiff said
he could not see what the two other men were
doing. Then Crist told the men at the end of
the pipe that was on the floor to lift it up.
When they did lift it up, it raised the iron
pipe up from the short 1-inch pipe on the stanchions a short distance, whereupon Crist, it is
testified to, told plaintiff, "Rogers, you take
that [1-inch piece of pipe] out and put the
roller on it and put it back in." This was the
inch round piece of pipe between the two stanchions where Rogers was standing, and the
roller was to be placed on it so as to make it
higher. This Rogers attempted to do. When
the raising up of the farther end of the 8-inch
pipe from the floor by the men there occurred,
it naturally caused the thread end of the pipe
farthest from those men who were lifting to
slip out of the coupling. Naturally and inevitably the farther they lifted up their end the
nearer the thread end would be to falling out of
the coupling, and when they got their end
raised up even, or nearly even, with the coupling, it must of necessity fall. This is what
did happen, and before Rogers was able to get
the 1-inch pipe out he got his hand caught
between the falling 8-inch pipe and the 1-inch
pipe, and he received the injuries for which
the action was brought. Crist changed the
usual procedure, and plaintiff claims he was
hurt by this change, and would not have been
if they had pursued the ordinary way used

prior to this accident. I have given these facts as the jury might have found them from the evidence, had the question been submitted to them as the evidence stood at the close of the plaintiff's case, when the nonsuit was granted. The questions, then, for the jury would be: Was Rogers in the exercise of due care and diligence at the time? And, if so, was the personal injury to him caused by reason of the "negligence of any person in the service of the employer intrusted with and exercising superintendence whose sole or principal duty is that of superintendence"? The trial court held that Crist was not exercising such superintendence. That decision is sought to be upheld here, upon the authority of two cases. The first is Carlsen v. McKee, 129 App. Div. 652, 114 N. Y. Supp. 280, in which case the workman, the servant, had procured a crowbar to turn over an iron beam, and was directed by his foreman to discard his bar and raise the beam by hand with the aid of fellow servants. The servant, the plaintiff there, discarded the bar, raised the beam with the help of his fellow servants, who let go their hold of the beam, upon which the plaintiff retained his hold, and his hand was hurt. All the Appellate Division held in that case was that the direction to discard the bar was not the proximate cause of the injury, but it was caused by the fellow servants letting go of the beam. The second case is Ozogar v. Pierce, Butler & Pierce Manufacturing Company, reported the last time in 134 App. Div. 800, 119 N. Y. Supp. 405. The case had somewhat of a lengthy career and was first reported in 55 Misc. Rep. 579, 105 N. Y. Supp. 1087, where a nonsuit was set aside, which was affirmed in 128 App. Div. 910, 112 N. Y. Supp. 1139. The judgment for the plaintiff recovered on the second trial was reversed in 134 App. Div. 800, 119 N. Y. Supp. 405. The final decision was by a divided court; Justice Kruse writing a dissenting opinion, in which Justice Spring concurred. The final decision goes upon the same ground as Carlsen v. McKee, supra, that seven workmen were handling a casting, some of the men let go of the casting, and the plaintiff, who continued to hold onto it, was injured. There the plaintiff had been employed by the defendant in a foundry for 12 years, and the accident happened in the foundry. It was there held that the plaintiff received his injuries because one or more of his fellow workmen let go of the heavy iron flask that they were handling, the plaintiff did not, and the flask fell upon plaintiff's hand. Those cases while similar to each other are not this case.

There is no evidence here that this plaintiff received his injuries because his fellow workmen let go of their hold upon this 8-inch pipe. So far as is disclosed by the evidence here, the workmen apparently did as they were told by Crist, the superintendent, to do at that time. In Guilmartin v. Solvay Process Company, 189 N. Y. 490, 82 N. E. 725, it is held that in that action, brought under the employer's liability act, the question is, not whether the negligent act is a detail of the work, but whether it is a detail of the superintendent's part of the work, or of that of the subordinate employés and servants, and that the question whether the plaintiff assumed the risk is answered by the provision of the statute, which enacts: "The question whether the employé understood and assumed the risk of such injury, or was guilty of contributory negligence, by his continuance in the same place and course of employment with knowledge of the risk of injury shall be one of fact, subject to the usual powers of the court in a proper case to set aside a verdict contrary to the evidence." Two questions in that case were submitted to the jury: First, whether Mullin, who was the foreman, was a person whose sole or principal duty was that of superintendence; second, whether it was negligent not to stop the machinery when the plaintiff was put at work to repair the injury to the belt and pulley—and the court held that the questions were properly submitted, and the jury were authorized to find, as they did, that the action of Mullin was an act of superintendence. In Smith v. Milliken Brothers, Incorporated, 200 N. Y. 21, 93 N. E. 184, the question was whether a person who gave the order that caused the injury in that case was at the time performing acts of superintendence within the employer's liability act, and it was held that a jury could have been permitted to say from the facts proved that the foreman was exercising such acts of superintendence. Applying these rules to this case, I think the question should have been submitted to the jury as to whether plaintiff was not injured by the negligent orders of Crist and whether Crist was not at the time a "person in the service of the defendants intrusted with and exercising superintendence whose sole or principal duty" was "that of superintendent." It appears from the plaintiff's testimony here that all Crist was doing was directing the others what to do. I think the judgment should be reversed, and a new trial granted, with costs to abide the event.